# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDALL E. FLOWERS, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-06-038-SPS |

## OPINION AND ORDER

The claimant Randall E. Flowers requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whether the

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Claimant's Background

The claimant was born on October 13, 1953, and was 50 years old at the most recent administrative hearing. He has a high school education plus some college and previously worked as a truck driver, welder, heavy equipment operator, and heavy equipment maintenance person. The claimant alleges he has been disabled since January 15, 1997, because of a prior heart attack, back pain, leg and foot pain, insulin dependent diabetes mellitus, and depression.

## Procedural History

On June 23, 1998, the claimant filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1394. Both applications were denied. ALJ Bruce Evans found the claimant was not disabled on August 26, 1999, but the Appeals Council remanded the case because newly-submitted treatment records suggested the claimant's mental impairments were more significant than the ALJ had determined. The ALJ again found the claimant was not disabled, but the Appeals Council remanded a second time because the ALJ did not discuss the claimant's allegations of pain or new evidence of bilateral foot pain and numbness. ALJ Michael Kirkpatrick held a supplemental hearing on April 2, 2004, and once again found that the claimant was not disabled in a decision dated August 7, 2004. The Appeals Council denied

review, so this latest decision by the ALJ represents the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift and/or carry ten pounds frequently and 20 pounds occasionally, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. The ALJ further limited the claimant to simple and routine job tasks that did not require contact with the public (Tr. 34-35). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economies he could perform, *e.g.*, housekeeper/cleaner, slicing machine operator, stripper cutter, lathe operator, and light assembly occupations (Tr. 36).

## Review

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical evidence; and, (ii) by finding he had the RFC to perform substantial gainful activity. In his first contention, the claimant argues that the ALJ improperly evaluated the opinions of his treating psychiatrist Dr. John McAlister, M.D. The Court finds this argument persuasive.

The record reveals that the claimant began treatment at Mental Health Services of Southern Oklahoma in October 1998, after a referral from the Department of Human Services for physical abuse by the claimant against his adolescent stepson. He was initially seen by licensed professional counselor Ken Grandy. The claimant complained of intense depressive

symptoms but denied any suicidal ideation (Tr. 211). He returned nine days later continuing to complain of symptoms of depression and anxiety which were getting worse. Mr. Gandy noted the claimant exhibited severe depression, meeting all nine of the criteria for major depression, and also exhibited symptoms consistent with generalized anxiety disorder. In addition to the problems with his stepson, he was under financial stress and felt guilty that he could not provide for his family (Tr. 209). Dr. McAlister saw the claimant in November 1998 and noted the claimant had suffered from major depression most of his adult life and was taking Paxil without any benefit. He increased the claimant's dosage of Paxil and assessed him with major depression (recurrent and severe) and assigned him current Global Assessment of Functioning ("GAF") score of 40 and a score of 45-50 over the prior year (Tr. 207-08). The claimant was again seen by Dr. McAlister in November 1998, indicating that he thought the increased dosage of Paxil was helping. Dr. McAlister continued the claimant on the same dosage of Paxil for one week and then recommended it be increased (Tr. 206). When the claimant met with Mr. Gandy for counseling in November 1998, his affect seemed slightly brighter and he was more open than in the past. His assets were noted to be his functional family system, capacity for enduring relationships, no substance abuse, recognition of psychological problems, functionally literate with 15 years of education, good work history, reliable living situation, and ability to live independently and use transportation, while his liabilities included his physical problems, unemployment, and lack of hobbies and interests. The claimant was again noted to be suffering from major depressive

disorder (recurrent and severe), generalized anxiety disorder, and a current GAF score of 45 (Tr. 203-05).

When the claimant returned to see Dr. McAlister in December 1998, he was doing well on Paxil, so Dr. McAlister continued him on the same dosage (Tr. 202). In January 1998, the claimant reported shaking, blurred vision, and dry mouth. Dr. McAlister reduced his dosage of Paxil and indicated that if the lower dosage did not work, the claimant would need something for his nerves (Tr. 200). In his counseling session with Mr. Gandy, the claimant brought along his stepson. He still exhibited symptoms of depression but was open in the session (Tr. 198). The claimant returned to Dr. McAlister in two weeks indicating that the reduced dosage of Paxil "drove him crazy," so Dr. McAlister increased the dosage and also prescribed the claimant Valium (Tr. 199). In February 1999, the claimant continued to shake so Dr. McAlister increased his dosage of Valium. He noted the claimant continued to take Paxil but was getting it through the Veterans hospital (Tr. 197). At the claimant's February counseling session, his depression was increased and he continued to exhibit low self-esteem. He denied suicidal ideation but was experiencing some hallucinations (Tr. 196). In March 1999, the claimant indicated that he felt worse. He shook all the time and his depression and anxiety symptoms were noticeably increased. The claimant was unable to look beyond his present circumstances. He was noted to suffer from posttraumatic stress disorder, chronic major depressive disorder (recurrent and severe with psychotic features), and was assigned a current GAF score of 45 (Tr. 192-95).

In April 1999, Dr. McAlister completed a medical source statement regarding the claimant's mental abilities. He determined that the claimant had moderate impairment in his ability: (i) to remember locations and work-like procedures; (ii) to understand, remember, and carry out very short and simple instructions; (iii) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iv) to sustain an ordinary routine without special supervision; (v) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (vi) to respond appropriately to changes in the work setting; (vii) to be aware of normal hazards and take appropriate precautions; and, (viii) to set realistic goals or make plans independently of others. Dr. McAlister determined that the claimant had *marked* impairment in his ability: (i) to understand, remember, and carry out detailed instructions; (ii) to maintain attention and concentration for extended periods; (iii) to work in coordination with or proximity to others without being distracted by them; (iv) to make simple work-related decisions; (v) to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (vi) to interact appropriately with the general public; (vii) to ask simple questions or request assistance; (viii) to accept instructions and respond appropriately to criticism from supervisors; (ix) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, (x) to travel in unfamiliar places or use public transportation (Tr. 250-51).

A treating physician's opinions are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted].[2] The ALJ mentioned a mental assessment completed by Dr. McAlister but did not discuss functional limitations imposed therein, determining instead that Dr. McAlister's opinions were entitled to no weight because: (i) he failed to provide any explanation about the nature of the claimant's mental impairment and why he assessed him with marked limitations in most areas of functioning; and, (ii) his conclusions were inconsistent with the progress notes from the mental health clinic (Tr. 34). This determination by the ALJ was deficient for a number of reasons.

First, the ALJ did not perform the required analysis under the treating physician rule for determining that Dr. McAlister's findings were not entitled to controlling weight. Although he rejected the assessment based on its inconsistency with the progress notes from the mental clinic, he failed to specifically identify any of the inconsistencies to which he was referring. *Id*. at 1121 ("Because the ALJ failed to explain or identify what the claimed

---

[2] The record does not reflect whether the ALJ considered Dr. McAlister to be a treating physician, but it seems clear that he was. The claimant testified that he received his mental health treatment from Mental Health Services of Southern Oklahoma and the psychiatric department of the veterans hospital in Oklahoma City (Tr. 626, 698-99). At Mental Health Services, the claimant saw a counselor every week and Dr. McAlister once or twice per month for six to eight months before Dr. McAlister left the clinic and the claimant began seeing another psychiatrist (Tr. 626-27, 663-64). The claimant also indicated in documents completed during the reconsideration process that he saw Dr. McAlister for counseling and medication (which the clamant specifically identified) in 1998-99 (Tr. 155-59).

inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Second, if Dr. McAlister's opinions lacked sufficient explanation, *e. g.*, as to the nature of the claimant's mental impairments or the reason why so many marked limitations of functioning were assessed, the ALJ should have recontacted Dr. McAlister for clarification rather than (or at least before) rejecting those opinions outright. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about the claimant's . . . limitations, the severity of those limitations, the effect of those limitations on her ability to work, . . . he should have contacted Dr. Baca for clarification of his opinion before rejecting it.").

Third, even if Dr. McAlister's opinions were not entitled to controlling weight, the ALJ was required to determine the proper weight to give them by analyzing *all* of the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527 [and § 416.927].'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted] [emphasis added].[3] Those pertinent factors include the following: (i) the length of the

---

[3] The ALJ was required to perform this part of the analysis even if Dr. McAlister was not a treating physician. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the

treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, in order to reject the opinion of a treating psychiatrist such as Dr. McAlister entirely, the ALJ was required to "give specific, legitimate reasons for doing so." *Id*. at 1301 [quotations omitted]. The ALJ thus failed to provide any of the detailed analysis required for outright rejection of Dr. McAlister's opinions as to the claimant's mental limitations.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of the opinions expressed by Dr. McAlister on the medical source statement. On remand, the ALJ should: (i) recontact Dr. McAlister, if possible, for any explanation the ALJ finds necessary; (ii) reconsider the assessment in accordance with the appropriate standards; and, (iii) determine what impact, if any, such reconsideration has on the claimant's ability to work.

---

medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion."), *citing Goatcher v. Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added].

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 10th day of September, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**